## ALL STATES SERVICE STATION, Inc., v. STANDARD OIL CO. OF NEW JERSEY.

### No. 7566.

United States Court of Appeals for the District of Columbia.

Decided March 24, 1941.

Robert A. Littleton, of Washington, D. C., for appellant.

Walter C. Clephane, of Washington, D. C. (J. Wilmer Latimer, and Gilbert L. Hall, both of Washington, D. C., on the brief), for appellee.

Before GRONER, Chief Justice and VINSON and RUTLEDGE, Associate Justices.

VINSON, Associate Justice.

The All States Service Station, Inc., defendant below, appeals from the judgment of the District Court dismissing its counterclaim.

The Standard Oil Company of New Jersey (the Standard Company) brought an action against the All States Service Station, Inc., (the Service Station) charging indebtedness of some three thousand odd dollars for goods sold and delivered. The Service Station admitted that it owed the debt, but filed a counterclaim asking $10,000 for an alleged violation of a restrictive area provision in a motor fuel sales contract. The contract also provided that the "Seller [the Standard Company] may cancel this contract at any time on giving Buyer ten (10) days' written notice of intention so to do." The sole question for decision is whether the following letter written by the Standard Company on September 26, 1936, and received the next day, constituted an effective notice:

"Our motor fuel sales contract with you dated June 6, 1935, grants to us the right to terminate the agreement by giving you ten days' written notice.

"In view of certain conditions, we find it necessary to exercise our right to terminate the agreement, such termination to be effective ten days from the date of this letter.

"In the meantime, our representative will call upon you regarding a new motor fuel contract."

The District Court concluded that this letter was a substantial compliance by the Standard Company with its right to cancel the contract, and that the cancellation became effective on the tenth day from the receipt. Since there was no evidence tendered to indicate a breach within that period, nor any to show damage, the Court dismissed the counterclaim. It reached the correct result.

The contract set the period that the notice must run. The Service Station agreed by contract that ten days' notice sufficiently protected its position. It was notified in clear terms that the Standard Company was terminating the contract. The legal effect of the Standard Company's letter, therefore, should be that the contract came to an end ten days after its receipt by the Service Station. By giving the letter this effect, the Service Station received fully the protection to which it agreed, the period of notice is determined by the appropriate contract provision, and the Standard Company's definite, meaningful act is not an empty gesture. To hold that the letter had no effect because it mistakenly set a period short of that required would make a modern application of the brittle fifteenth century common law. The rule which we adopt, that a notice, good in all other respects, such as being definite rather than a mere statement of future intention, is not made totally ineffective because it states a period shorter than the contract requires, is in accordance with the authorities.[1]

The Service Station relies heavily upon the case of Oldfield v. Chevrolet Motor Co.[2] The Standard Company states that this case represents the decidedly minority view. In addition, it should be observed that the one who received the notice stood to lose a substantial rebate on purchases already made.[3] Two and a half years later the same Judge writing for the same Court with five of the seven members unchanged stated that where the cancellation affects only future liability, as contrasted with the "substantial, subsisting rights" in the Oldfield case, it has been repeatedly held that a notice is good after the contractual or statutory period has run even though the notice tried to set an earlier date.[4] Here, there were no accumulated interests; the Service Station could only hope that it would continue to do business with Standard Oil and that it would retain an exclusive sales area.

The Service Station also relies upon two Maryland cases.[5] These cases do have some language that seems to state a rule that a notice shorter than that required by the contract is completely ineffective. But when this language is read in connection with the rest of the discussion and in light of the facts it can be determined that these cases present no principle incom-

---

[1] 35 A.L.R. 893, 904–912; 32 C.J. 1249–50; compare Black v. Travelers Ins. Co., 231 Ala. 415, 165 So. 221.

[2] 198 Iowa 20, 199 N.W. 161, 35 A.L. R. 889.

[3] "The attempted cancellation was less than two weeks prior to the date on which the appellant would be entitled, if the contract were then in force, to nearly $3,000 of additional discount on purchases [profit] made under it during the year preceding. This situation presents no persuasive reasons for relaxing established rules of construction as to either the contract or notice in aid of so harsh a proceeding." Ibid at pages 162, 163 of 199 N.W.

[4] Harrington v. Bremer County Farmers' Mut. Fire Ins. Ass'n, 203 Iowa 282, 211 N.W. 383, 384. "In the view we take of the case, it is unnecessary to consider * * * [appellants'] contention that [the notice] was ineffectual to cancel the policy because it purported to do so two days after its date, while the statute * * * required five days' notice.

"We take occasion to say, however, that the case of Oldfield v. Chevrolet Motor Co. * * * relied upon [sic] the appellants to sustain the latter contention, is clearly to be distinguished up-

on the facts and, we think, upon principle as well.

"In that case, * * * [inter alia] the effect of the termination of the contract by notice was to deprive the other party to it of substantial, subsisting rights under it, which only the lapse of a short time and the continuation of the contract were required to mature. * * *

"Here, * * * The only effect of the cancellation is to relieve the insurer from a future liability and to put the insured to the necessity of procuring other insurance, if he so desires. In such case, it has been repeatedly held that a notice by the insurer of the cancellation of a policy of insurance which is otherwise sufficient, is effective to cancel the policy at the expiration of the time required for such notice by the terms of the policy or a statutory provision, although the notice itself may say the cancellation will be effective at an earlier date [citing cases]. * * * *"

[5] German Union Fire Ins. Co. v. Clarke Co., 116 Md. 622, 82 A. 974, 39 L.R.A.,N.S., 829, Ann.Cas.1913D, 488; American Fire Ins. Co. v. Brooks, 83 Md. 22, 34 A. 373. But see Seaboard Mut. Casualty Co. v. Profit, 4 Cir., 108 F.2d 597, 126 A.L.R. 1105.

patible with our holding in the instant case. [6]

The only case particularly pertinent in this jurisdiction that has been called to our attention is Lyon v. Pollard. [7] Either party could terminate by giving 30 days' written notice. A notice was served on July 11th, which may have been waived. Another notice was given on September 19th which said that the time under the July 11th notice had expired and that the contract was now terminated. An instruction that "even if the notice of July 11th had been wholly withdrawn, the subsequent notice of September 19th was in legal effect a renewal of the former notice, and of itself operated to terminate the said contract at the expiration of thirty days from its date" [8] was requested. The refusal to give this instruction was held error. While this case does not compel affirmance of the District Court in the instant proceeding, we believe its reasoning sound, and persuasive on the present facts. [9]

Affirmed.

---

[6] The brief of the Service Station quotes the following language from the American Fire Ins. Co. v. Brooks case. "The act of cancellation was therefore made one day after the receipt of the notice by Barton. This was not within the right reserved in the policy, and was an utterly void act. Had the attempt to cancel been made later on, another question would have arisen, upon which we have now no occasion to comment. No other attempt was made; and what was done, for the reasons given, was nugatory and void." 34 A. 373, 376. In this case the receivers for a manufacturing company brought suit to collect upon a policy which provided that the insurer could cancel upon five days' notice. The company took out the policy through a broker. At renewal time it paid the broker a premium for another year's coverage. The broker failed to remit to the insurance firm. Later the firm sent a letter to the manufacturing concern stating that it had renewed the policy but unless the premium was paid on a certain date no further liability would be recognized. This letter came into the hands of Barton, who can be assumed to represent the manufacturing company, the day before the purported deadline. Barton, in a letter, expressed surprise that the payment had not reached the insurance firm, and stated that he would write again when he had heard from the broker. The insurance firm cancelled the policy on its books, probably on the day set, and a fire occurred quite some time later. The trial court found that the broker was an agent of the insurance firm. On this issue the Maryland Court of Appeals found no error. Thus the premium had been paid. Nonetheless the question remained whether the insurer had properly cancelled the policy. The Court said that it would pass the hypothetical character of the notice, but such a notice, based upon the non-payment of a premium, when in fact it had been paid, did not ipso facto work a cancellation. Some other act was needed. An entry of cancellation on the books of the insurer was not such an act. The holding of the Court, then, is bottomed more upon the nature of the notice, which assumed, contrary to fact, that the premium had not been paid, than upon the deficiency of time.

In the Clarke case, the Maryland Court of Appeals, after stating that the notice was deficient because it was shorter than the contract required, relying upon the Brooks case, and because it was an expression of future intention, said, "There remains to be considered that which is probably the most important question in the case, to wit, whether a return or tender of the pro rata part of the premium was a prerequisite to any valid cancellation of the policy." 82 A. 974, 975. After a survey of the law on this point, the Court adopted what it stated was the majority rule: that a tender of the money is a condition precedent. Thus, in the Clarke case the Maryland Court states a rule opposed to the one we adopt, but in so doing it relied upon the Brooks case, a reliance which is very questionable, and moreover, the issue was of secondary importance in the Clarke case.

[7] 87 U.S. 403, 20 Wall. 403, 22 L.Ed. 361. In Merritt v. Thompson, 53 App. D.C. 233, 289 F. 631, a monthly tenancy was involved. Inasmuch as the statute provided that the notice was to expire on the day of the month from which the tenancy ran (D.C.Code, Tit. 25, § 312), the situation is quite different from here where the contract could cease at any time after ten days' notice.

[8] 20 Wall. 403, 87 U.S. 403, 406, 407, 22 L.Ed. 361.

[9] Similarly other courts have held that if one terminates a contract immediately, he is only liable for the damages over the period the notice would have had to run. Freiburger v. Texas Co., 216 Wis. 546, 257 N.W. 592; Chevrolet Motor Co. v. McCullough Motor Co., 9 Cir., 6 F.2d 212, 35 A.L.R. 893.