**PUTNAM v. AIR TRANSPORT ASS'N OF AMERICA et al.**

United States District Court
S. D. New York.
June 2, 1953.

Kreis & Seaman, New York City, Robert R. Kreis, New York City, on the brief, for plaintiff.

Samuel E. Gates, Leonard P. Moore, and Harold L. Russell, New York City, for defendants Air Transport Ass'n of America, Air Traffic Conference of America, Chicago & Southern Air Lines, Inc., and Northwest Airlines, Inc.

Debevoise, Plimpton & McLean, New York City, by Samuel E. Gates, New York City, for defendant American Airlines, Inc.

Samuel E. Gates, New York City, for defendants Braniff Airways, Inc. and Capital Airlines, Inc.

Harold L. Russell, New York City, for defendant Eastern Air Lines, Inc.

Chadbourne, Parke, Whiteside, Wolff & Brophy, New York City, by Leonard P. Moore, New York City, for defendant Trans World Airlines, Inc.

Hardin, Hess & Eder, New York City, by Monroe Collenburg, New York City, for defendant United Air Lines, Inc.

DIMOCK, District Judge.

Plaintiff, who owns and operates a travel agency, has moved for a temporary injunction against defendants' refusal to deal through him in the sale of air travel tickets. Defendants have moved to dismiss plaintiff's first cause of action on the ground of insufficiency and for summary judgment on both causes of action or, as an alternative to summary judgment, that the court specify the facts that appear without substantial controversy.

The first cause of action is brought against all defendants "under the Anti-Trust Laws of the United States" and the second is brought against the defendant Air Traffic Conference of America for wrongful interference with contract relationships. Injunction and treble damages are sought.

At outset I wish to express my concurrence with the parties' attitude in not discussing the doctrine of primary jurisdiction. I do not think that it has any application in this case where the Civil Aeronautics Board has already acted upon the agreement involved. Cf. Apgar Travel Agency v. International Air Transport Ass'n, D.C.S.D.N.Y., 107 F.Supp. 706; Far East Conference v. United States, 342 U.S. 570, 72 S.Ct. 492, 96 L.Ed. 576.

Taking up the motion to dismiss the first cause of action for insufficiency, I shall consider by themselves the allegations of the complaint, giving the benefit of every intendment to plaintiff. By that process I find that the cause of action states the facts which I shall proceed to set forth.

Plaintiff is engaged in the travel agency business under the trade name, Associated Traffic Service. Defendant Air Transport Association of America, which I shall call "the Association", is an unincorporated trade association composed of all the regularly scheduled domestic air carriers and defendant Air Traffic Conference of America, which I shall call "the Conference", is a division of the Association which deals with the common traffic problems of the industry. Plaintiff had a sales agency agreement with the Conference which qualified him to sell transportation tickets over the lines of the members of the Association and he was engaged in profitable operations in the sale of the tickets of eight air lines who are named as defendants. Defendants, through the instrumentality of the Conference, which represented all the scheduled airlines, entered into an illegal conspiracy in restraint of interstate commerce the effect of which was to deprive plaintiff and others of their business as airline travel agents. The airlines agreed that they would sell tickets through no travel agents except those who had contracts with the Conference and empowered the Conference to make and cancel such contracts. Pursuant to this power the Conference made a contract with plaintiff and later, by authority of a cancellation clause, cancelled it to plaintiff's damage, although the contracts of other travel agents remained in force.

There are many allegations of legal conclusions such as discrimination, boycott, decrease of competition and injury to the public interest but the above comprises all of the actual facts which can be deemed by fair intendment to be alleged.

The allegations of the first cause of action would have been insufficient under the law as it stood before the adoption of the Federal Rules of Civil Procedure, 28 U.S.C.A. and defendants say that, even under the system of notice pleading brought in by the Rules, the allegations are still insufficient. Citing Emich Motors Corp. v. General Motors Corp., 7 Cir., 181 F.2d 70, 75, reversed on other grounds 340 U.S. 558, 71 S.Ct. 408, 95 L.Ed. 534, and Dublin Distributors v. Edward & John Burke, Limited, D.C.S.D.N.Y., 109 F.Supp. 125, 126, fn. 1, they claim that greater particularity is required in antitrust suits than in negligence or contract cases and that the pleading of the first cause of action does not meet that test.

I have found no case decided since the advent of the Rules the principle of which would condemn plaintiff's pleading in the first cause of action. It seems to me that sufficient is alleged to indicate that plaintiff claims that a state of facts exists similar to that presented in Anderson v. Shipowners' Association of Pacific Coast, 272 U.S. 359,

47 S.Ct. 125, 71 L.Ed. 298. There the Supreme Court upheld a bill of complaint from which it was able to spell out the charge that each of the members of certain associations which included all of the shipowners on the Pacific Coast had surrendered his freedom of action in the matter of employing seamen and had agreed to abide by the will of the associations and that the plaintiff there, after having been refused employment by the associations, had been refused by one of the members on the sole ground that employment could be accomplished only through the associations. I can perceive no substantial difference between that case and this. In each every member of a group engaged in transportation surrendered to the group, to a substantial extent, his right to choose his agent for accomplishing one of the functions in that transportation. The fact that in the Supreme Court case the agents were seamen and in this case they were travel agents does not seem to me to be a controlling difference. It is true that seamen are essential and travel agencies are not but it would be a dangerous rule that would limit the effect of the antitrust laws to essential elements of commerce such as the bare necessities of the actual movement of freight or passengers and leave the carriers free to combine and conspire at will with respect to such matters as Pullman accommodations.

Defendants point out that injury to the public is an essential element of a case under the Sherman Anti-Trust Act, 15 U.S.C.A. §§ 1–7, 15 note, and say that defendants' relations with travel agents cannot affect defendants' services to the public because their services to the public are completely regulated by the Civil Aeronautics Board, citing 49 U.S.C. §§ 642(b) (d) and (g) and § 483. Without passing on the accuracy of his broad statement, the argument seems to me to be only another way of saying that it must be presumed that defendants' conduct here complained of was authorized by regulations of the Board and I cannot indulge in any such presumption.

When it comes to defendants' motion for summary judgment, however, the record presented shows that the arrangement between the Conference under which the Conference was empowered to appoint and to remove plaintiff as a travel agent through whom the members might sell tickets was approved by the Civil Aeronautics Board, 49 U.S.C. § 492.

■ This approval of the arrangement exempted it and the action here complained of from the operation of the antitrust laws. That is the effect of Section 414 of the Act, 49 U.S.C. § 494, which provides:

"Any person affected by any order made under sections 488, 489, or 492 of this title, shall be, and is, relieved from the operations of the 'antitrust laws', as designated in section 12 of Title 15 and of all other restraints or prohibitions made by, or imposed under, authority of law, insofar as may be necessary to enable such person to do anything authorized, approved, or required by such order."

The members of the Conference are "persons affected by" the order approving the arrangement under which plaintiff was appointed and removed. The arrangement authorized the appointment and removal of plaintiff. Can it be said that, when the order approved an arrangement that authorized this appointment and removal, the appointment and removal were "authorized" by the order so as to come within the protection of the statute? I think that it would be captious to hold otherwise. See United States v. Railway Express Agency, Inc., D.C.D.Del., 101 F.Supp. 1008.

If the claim were made that the machinery thus approved by the Board was being perverted to accomplish some result not contemplated by the Board it might be plausibly argued that this perversion was not authorized by the order and was thus not protected. See United States v. Borden Co., 308 U.S. 188, 204–205, 60 S.Ct. 182, 84 L.Ed. 181. There is no claim however that the action of the Conference under the arrangement has had any result except those which would inevitably flow from the exercise of the powers given the Conference by the contractual provisions. In other words the so-called boycotting of, and discrimination against, plaintiff

are the inevitable result of the Board-sanctioned agreement among the members of the Conference that they will not employ unapproved agents. The same "boycotting" and "discrimination" would result in the case of any agent who was stricken from the list.

I have considered thus far only the first cause of action which proceeds under the antitrust laws. The second cause of action proceeds on the theory of an interference by the Conference with contractual relations. It is true that everything that the Conference did was contemplated by the arrangement made between its members and approved by the Civil Aeronautics Board and that section 414 of the Act above quoted purports to relieve the members of the Conference "of all * * * restraints or prohibitions made by, or imposed under, authority of law," insofar as may be necessary to enable members of the Conference to do anything authorized, approved, or required by the order approving the arrangement. I have already held that this language exempts the members of the Conference from the operations of the antitrust laws and a parity of reasoning would require a holding that it relieves them from the restraint "made by * * * authority of law" against interference with contractual relations authorized by the arrangement. There may well be, however, a determinative distinction between exempting parties from the operation of such statutory expressions of public policy as the antitrust laws on the one hand and from the operation of the rules of the common law on the other hand. In view of this possible distinction, I proceed to consider whether on this record plaintiff has raised any substantial issue tending to support a cause of action for interference with contractual relations.

In order to consider this question, I must go farther into the record. The Conference's scheme for handling the travel agent situation is embodied in a resolution adopted by the Conference which, under the terms of the by-laws, constitutes a contract between the members of the Conference. This resolution sets forth the precise form of contract to be entered into between the members of the Conference collectively and an agent. Such contracts are executed by the executive secretary of the Conference on behalf of all of its members. The execution of such a contract does not constitute the actual appointment of the agent to act for any particular carrier although, unless such a contract is in existence, no carrier may appoint the agent as its representative. In the case at bar, such a contract was entered into by the Conference with plaintiff and plaintiff, by a separate certificate in each case, was appointed to represent several carriers, members of the Conference, some of whom are expressly-named defendants in this action.

Plaintiff complains that the Conference, a group of carriers, with all of whom he was in contractual relations, is liable to him for interfering with contractual relations which he enjoyed under the same contract with certain members of the group. I suppose that, as a matter of pure theory, a case might be imagined where an association like the Conference, by the exercise of powers delegated to it, caused certain of its members to break contracts and thus gave the party injured by the breach rights against the entire association as well as against the members who broke the contracts. Even granting that, however, the contract here expressly exonerated the Conference from any liability to plaintiff for disqualifying him from acting for its members. Paragraph 24 of the agreement between the Conference and the agent provides for the termination of the agreement at any time by notice in writing from the executive secretary to the agent and paragraph 26 provides that the agent shall have no recourse against the Conference by reason of any termination of the agreement in accordance with its provisions. There is no reason why such provisions should not be given effect. Bank of America Nat. Trust & Savings Ass'n v. Erickson, 9 Cir., 117 F.2d 796, 799; Sharpe v. Great Lakes Steel Corporation, D.C.S.D.N.Y., 9 F.R.D. 691; Bushwick-Decatur Motors v. Ford Motor Co., 2 Cir., 116 F.2d 675; Busam Motor Sales, Inc., v. Ford Motor Co., D.C.S.D.Ohio, 104 F.Supp. 639; American Machine & Metals v. De

Bothezat Impeller Co., Inc., D.C.S.D.N.Y., 82 F.Supp. 556, 559–560, affirmed 2 Cir., 180 F.2d 342, certiorari denied, 339 U.S. 979, 70 S.Ct. 1025, 94 L.Ed. 1383.

The defendants' motion for summary judgment is granted. Plaintiff's motion for a temporary injunction is dismissed.