**AIR FREIGHT HAULAGE OF PUERTO RICO, INC. (Successor to Trans Island Trucking Service, Inc.), Plaintiff,**

v.

**AMERICAN AIRLINES, INC., et al., Defendants.**

**Civ. No. 1055–73.**

United States District Court, D. Puerto Rico.

May 25, 1976.

---

Manuel A. Sanchez, Edelmiro Salas Garcia, Hato Rey, P. R., for plaintiff.

Patrick J. Wilson, O'Neill & Borges, Hato Rey, P. R., for defendant airlines; Harold Warner, Chadbourne, Parke, Whiteside & Wolff, New York City, of counsel; Hartzell, Ydrach, Mellado, Santiago, Perez & Novas, San Juan, P. R., for Ryder System, Inc.; Patrick J. Wilson, O'Neill & Borges, Hato Rey, P. R., for Air Cargo, Inc.; Russell S. Bernhard, Macleay, Lynch, Bernhard & Gregg, Washington, D. C., of counsel.

## OPINION AND ORDER

TORRUELLA, District Judge.

The complaint in this case alleges that the Defendants have entered into a conspiracy directed to monopolizing and unreasonably restricting the trucking of air freight to and from the major airport of the City of San Juan, Puerto Rico.

By Motion dated October 15, 1975 the Defendant air carriers and Air Cargo, Inc., moved for summary judgment on the ground that the action challenged in the Complaint has been immunized from the operations of the antitrust laws by reason of orders of the Civil Aeronautics Board issued pursuant to Sections 412 and 414 of the Federal Aviation Act of 1958 (49 U.S.C. §§ 1382 and 1384).

The Court has read the affidavit of Merrill L. Clements dated October 6, 1975 in support of Defendants' Motion, Defendants' Memorandum of October 15, 1975 in support of said Motion, Plaintiff's reply Memorandum opposing the Motion dated January 16, 1976, Defendants' reply thereto dated February 5, 1976 and Plaintiff's response thereto dated April 26, 1976.

Oral argument was held on April 27, 1976.

The Court finds that there are no genuine issues as to any material fact and that this case is appropriate for summary judgment.

## UNDISPUTED MATERIAL FACTS

The undisputed material facts are as follows:

1. On March 1, 1947, all the airlines then certificated by the Civil Aeronautics Board (hereinafter referred to as the "Board") to engage in interstate commerce, entered into an "Agreement Among Certain Air Carriers Relating to Air Cargo Services", designated by the Board as "Agreement C.A.B. No. 1041" (hereinafter referred to as the "Agreement") (Clements Aff. p. 4, Exhibit 1).

2. Under the Agreement, the defendant Airlines agreed:

". . . to utilize that corporation in the performance of certain ground terminal operations in connection with the transportation of air cargo such as ground transportation incidental to airline hauls; the facilitation of joint interline movement of air cargo over the lines of member air carriers; the arrangement for joint interline agreements and services with other common carriers for over-the-road hauls in connection with transportation of property by surface carriers

and aircraft; the provision of cargo terminals; and the performance of other services and provision of other facilities incidental to these enumerated matters; . . ." (C.A.B. Order Serial No. 1086; Clements Affidavit, Ex. 2, pp. 1–2).

3. On December 31, 1947, the Board approved the Agreement (CAB Order E–1086; Clements Aff., Ex. 2).

4. On September 2, 1948, the Board reaffirmed its approval of the Agreement, stating:

"We are fully in sympathy with all efforts of air carriers to reduce costs by the consolidation of individual duplicating ground and terminal facilities. These efforts are clearly within the scope of the policy of section 2 of the Civil Aeronautics Act and thus in the public interest. That section provides, among other things, for the encouragement and development of air transportation, and the improvement of relations between air carriers. Cooperative efforts of air carriers to accomplish these results through agreements such as that establishing Air Cargo receive, and will continue to receive, our support and encouragement." (9 C.A.B. 468, 469 Clements Aff. Ex. 4 pp. 2–3).

5. The Agreement is of continuing duration and is still in effect. The five amendments thereto have likewise been approved by the Board (Order Serial No. E–6913, dated October 24, 1952; Order Serial No. E–9532, dated August 30, 1955; Order Serial No. E–22044, dated April 6, 1965; and Order 75–6–37, dated June 6, 1975 (Clements Aff. p. 5, Ex. 3). Between 1947 and March 8, 1962, Air Cargo, Inc., in its capacity as agent of the airlines, filed with the Board each standard-form Service Contract executed with local motor carriers to provide pickup and delivery service for the Defendant airlines. Each of these contracts was approved by the Board (Clements Aff. pp. 7–9).

6. Effective March 8, 1962, the Board dispensed with the requirement that ACI cartage agreements be filed with the Board under Section 412 of the Act (CAB Economic Regulations § 289.3, 14 C.F.R. Part 289; Clements Aff. p. 10).

7. Since December 31, 1947, Air Cargo, Inc., and the Defendant Airlines have filed with the Board copies of all agreements and documents and all information in relation to activities of Air Cargo, Inc., as have been prescribed or requested by the Economic Bureau of the Board (Clements Aff. p. 11).

8. By Order 68–7–40, dated July 10, 1968, the Board granted the Petition of Air Cargo, Inc. that the San Juan pickup and delivery service area be expanded to include the entire Island of Puerto Rico (Clements Aff. p. 16, Ex. 11).

9. During the period November, 1970 to September, 1973, Air Cargo, Inc., acting as agent for the airlines serving Puerto Rico, contracted with the following local motor carriers to provide pickup and delivery of air freight in Puerto Rico:

Air Freight Haulage of Puerto Rico, Inc.
Arecibo Air Cargo, Inc.
Guevara's Air Cargo
Jaime A. Sallelas (terminated in 1972)
Mayaguez Air Cargo, Inc.
Javeca Delivery
Ray's Delivery Service (terminated in 1972)
Ponce Air Cargo, Inc.
Urbino Delivery Service

(Clements Aff. p. 17).

10. Effective November 14, 1970, Air Cargo, Inc. entered a standard-form Service Contract with Plaintiff Air Freight Haulage of Puerto Rico, Inc. (Clements Aff. p. 18 Ex. 24).

11. On August 16, 1973, Air Cargo, Inc. notified Plaintiff that its Service Contract was being terminated on September 30, 1973, in accordance with the termination provisions of the Contract and the Contract was so terminated (Clements Aff. p. 20).

12. During 1974 and 1975, Air Cargo, Inc., acting as agent for the Defendant Airlines serving Puerto Rico, employed the following local motor carriers pursuant to its Service Contracts for the pickup and delivery of air freight in Puerto Rico:

Arecibo Air Cargo
Guevara's Air Cargo
Javeca Delivery
Mayaguez Air Cargo
Ponce Air Cargo
Urbino Air Cargo
Wilfredo Rivera
Ray Delivery Service (terminated February 6, 1974)

(Clements Aff. p. 21).

13. Neither the Defendant Ryd-Air, Inc. nor Defendant Ryder System, Inc. have ever had a contract or other relationship with Air Cargo, Inc. or the Defendant Airlines to perform pickup and delivery services or any other operations for the airlines in Puerto Rico (Clements Aff. p. 27).

### Conclusions of Law

1. Since December 31, 1947, the Board has continually approved the practice of the Defendant air carriers in having their wholly-owned subsidiary, Air Cargo, Inc., act as their agent in contracting with local motor carriers by appointing such carriers as airlines cartage agents to provide pickup and delivery services for the Defendant Air Carriers at all airports through which they operate. By virtue of Section 414 of the Federal Aviation Act of 1958 (49 U.S.C. § 1384), the Defendants are accordingly relieved from the operations of the antitrust laws insofar as may be necessary to enable them to have Air Cargo, Inc. act as their agent in contracting with local motor carriers for the pickup and delivery of air freight. *Hughes Tool Company v. Trans World Airlines, Inc.,* 409 U.S. 363, 366, 93 S.Ct. 647, 34 L.Ed.2d 577 (1933); *Pan American World Airways v. United States,* 371 U.S. 296, 304, 83 S.Ct. 476, 9 L.Ed.2d 325 (1963); *Scroggins v. Air Cargo, Inc.,* 13 Avi. 17,469, 17,471 (N.D.Ga., 1974); *Putnam v. Air Transport Ass'n of America,* 112 F.Supp. 885 (S.D.N.Y., 1953).

2. In *Breen Air Freight Ltd. et al. v. Air Cargo, Inc., et al.,* 470 F.2d 767 (CA 2, 1972), cert. denied, 411 U.S. 932, 93 S.Ct. 1901, 36 L.Ed.2d 392 (1973), the United States Court of Appeals for the Second Circuit, held that Air Cargo, Inc. was not acting as agent for the air carriers when it entered into a contract with Ryder System, Inc. in 1970 under which Ryder System, Inc. created a subsidiary (Ryd-Air, Inc.) *in which Air Cargo, Inc. was to have a 20% ownership.* As a result, the Court held that "the Board lacks authority to immunize the contracting parties from liability for antitrust damages" (470 F.2d at 771). The Court's decision in the *Breen* case was based on the Court's conclusion that Air Cargo, Inc.'s providing of air freight pickup and delivery service "indirectly through an ownership interest in a joint venture", 470 F.2d at 774, had not been approved by the Board.

In the case before this Court, however, no factual situation comparable to the *Breen* case arrangement exists. In this case Air Cargo, Inc. has acted *solely as agent for the airlines* serving Puerto Rico by contracting with local motor carriers to provide such pickup and delivery service. This is precisely the mode of operation approved by the Board in its Order E–1086 of December 31, 1947 and which has been repeatedly approved by the Board in the 29 years ensuing. The United States Court of Appeals for the Second Circuit is in agreement that:

". . . the CAB is empowered to approve agreements among air carriers and common carriers affecting air transportation. 49 U.S.C. § 1382. All agreements affecting air transportation must be filed prior to their implementation by the air carriers which are party to them, and, once approved by the CAB, these agreements are exempt from the operation of the antitrust laws, 49 U.S.C. § 1384 . . ." (470 F.2d at 770).

Furthermore, the Court in the *Breen* case expressly stated that Air Cargo, Inc. "has the authority to provide [pick-up and delivery] services directly." (470 F.2d at 774).

3. Finally, since "the CAB approval empowered Air Cargo, on behalf of all airlines, to make and supervise agreements with truckers", *Scroggins v. Air Cargo, Inc.,* supra, at 17,371, the appointment and removal of Plaintiff as one of the local motor carriers to provide pickup and delivery of air freight in Puerto Rico was clearly authoriz-

ed by the Board and comes within the protection of Section 414 of the Federal Aviation Act of 1958.

4. The actions of the Defendants herein have been immunized from the operations of the antitrust laws by reason of orders of the Civil Aeronautics Board issued pursuant to Sections 412 and 414 of the Federal Aviation Act of 1958 (49 U.S.C. §§ 1382 and 1384).

In view of the foregoing undisputed material facts and our Conclusions of Law, it is ORDERED that Summary Judgment be entered by the Clerk on behalf of the several Defendants, dismissing the Complaint filed herein.

IT IS SO ORDERED.