SEEBURGER and another, Respondents, vs. CITIZENS MUTUAL FIRE INSURANCE COMPANY OF WISCONSIN, Appellant.

*May 5—June 8, 1954.*

For the appellant there was a brief by *Jeffris, Mouat, Oestreich, Wood & Cunningham,* and oral argument by *Harry F. Knipp,* all of Janesville.

For the respondents there was a brief by *Lehner, Lehner & Behling, Adolph P. Lehner, Howard N. Lehner,* and *Eugene E. Behling,* all of Oconto Falls, and oral argument by *Howard N. Lehner.*

CURRIE, J. The policy of fire insurance upon which plaintiffs' cause of action is based was issued by the defend-

ant under date of February 7, 1949, for a term of five years with the stated premium payable annually. Seeburger, the insured, paid the first year's premium on the policy at the time he applied for the same but failed to pay any further annual premiums as they fell due. The fire loss for which recovery is sought in this action by plaintiffs occurred on March 18, 1951, or some thirteen months after the first year's coverage under the policy.

The plaintiff Seeburger's application for the policy was attached to the policy and incorporated therein by reference. Immediately above Seeburger's signature to the application appeared the following printed paragraph:

"For and in consideration of an insurance policy issued to me by the Dairymans Underwriters, of Janesville, Wis., and the same being issued for a term of five years on the annual premium plan, I do hereby agree and bind myself and my heirs and assigns to pay the annual premium due said company on the above-named policy on or before each anniversary date during the life of said policy; and on failure on my part to pay the annual premium on each anniversary date, the said policy shall become void and of no effect after such date, and in such event the Insurance Company shall not be liable for any loss or damage under my policy."

The policy itself was in the statutory form set forth in sec. 203.01, Stats., as required by sec. 203.06, with the exception above noted of having the application containing the above-quoted paragraph, incorporated into the policy by reference. In the blank space provided at the top of the policy for stating the premium, the premium was typed in so as to make it clear that the amount stated was an annual premium, and not an aggregate premium for the entire five years for which the policy was to run.

It is the contention of counsel for the plaintiffs that the insertion of the above-quoted paragraph in the application and the making of the application a part of the policy was

such an amendment or modification of the standard fire policy as to be void because not authorized by sec. 203.06, Stats., on the ground that such paragraph of the application conflicts with the cancellation clause of the standard fire policy. Furthermore, it is urged that it was not permissible for the defendant to state the premium on an annual basis instead of a five-year basis. From these premises, plaintiffs' counsel maintain that the ultimate result is that, inasmuch as the policy was written for five years, the defendant Insurance Company must be held as a matter of law to have extended credit to Seeburger for the remaining four years' premium. This was the view adopted by the learned trial court.

We find it unnecessary to determine whether the policy issued by the defendant did contain any provision which conflicted with the standard fire policy so as to violate sec. 203.06, Stats., because of our conclusion that the defendant did terminate the policy in a manner which fully complied with the cancellation clause of the standard fire policy, which clause was set forth verbatim in defendant's policy. Such cancellation clause, in so far as material herein, read as follows:

"This policy may be canceled at any time by this company by giving to the insured a five days' written notice of cancellation with or without tender of the excess paid premium above the *pro rata* premium for the expired time, which excess, if not tendered, shall be refunded on demand. Notice of cancellation shall state that said excess premium (if not tendered) will be refunded on demand."

Under date of January 9, 1950, the defendant mailed to the plaintiff Seeburger a notice reading as follows:

"Notice of Annual Premium

"According to the terms of your policy, there is due the company the annual premium as stated below. Please make

your remittance in this envelope so that you will certainly get the proper credit.

"Your premium will become delinquent on date mentioned below and your policy will be automatically suspended from noon that day until reinstated by the payment of the premium. During period of such suspension the company will not be liable for any loss which shall occur and if any loss shall occur during such period, receipt of the premium by the company shall not then constitute reinstatement.

"Mr. Ed. Seeburger
"Crivitz, Wisconsin

"Your premium is due....February 7, 1950.
"Policy No. 304–370. Annual premium $28.40.
"Policy No.........Annual premium $.....
"Please be sure to send remittance in this envelope

"Dairymans Underwriters
"Janesville, Wisconsin"

A second notice, practically identical in wording to the first, was also mailed by the defendant to Seeburger on January 30, 1950, except that this second notice was labeled "Final Notice." Then on February 9, 1950, the defendant mailed to both the plaintiff Seeburger and the plaintiff bank letters reading as follows:

"Re: Policy No. D304–370
"Premium $28.40 Due February 7, 1950
"Assured Ed. Seeburger
"Covers: Sec. 33 Twp. 32 N. Range 19E county Marinette

"You are hereby notified that the policy listed above has lapsed due to your failure to pay the annual premium by the anniversary date. Your interest in this policy lapsed on the date shown above.

"The insurance may be reinstated as of the receipt in this office of the annual premium, providing there has been no loss.

"If the insurance is not reinstated, kindly return the policy to close our files."

In *Wisconsin Nat. Gas Co. v. Employers Mut. L. Ins. Co.* (1953), 263 Wis. 633, 58 N. W. (2d) 424, we were called upon to pass on the sufficiency of a notice given by the defendant insurance company to cancel a policy of automobile liability insurance because of failure of the insured to pay a balance of premium due. The notice stated that the company "hereby cancel" the policy "effective as of 12:01 a. m. standard time, May 10, 1949." Inclosed with such notice was a card which stated that if a check for the premium balance was received before the cancellation date, the coverage would be reinstated. In our decision in that case we stated (p. 641):

"In the case at bar the notice sent by the company clearly expressed an election to cancel the policy. It set forth a specific time when the cancellation would be effective. There is nothing in any part of the notice or the accompanying card that may fairly be said to amount to a retraction or modification of the cancellation. . . . Such notice was clearly an effective notice to terminate the policy under the decision of the Washington supreme court in *Trinity Universal Ins. Co. v. Willrich,* 13 Wash. (2d) 263, 124 Pac. (2d) 950."

In the instant case the two notices to the insured, instead of stating that the policy would be canceled on February 7, 1950, stated that it would be *"automatically suspended"* from noon of that day until reinstated by payment of the premium. We can perceive of no distinction between the legal effect of such notices and the notice given in the *Wisconsin Nat. Gas Co. Case.* There was no necessity of mentioning the subject of refund of excess premium because there was no excess premium as of the cancellation date.

While the notices of January 9 and January 30, 1950, were effective to terminate the rights of the plaintiff Seeburger under the policy, they did not affect the plaintiff bank's rights under its loss-payable clause, as mortgagee of Seeburger, inasmuch as such notices were not mailed to the

bank. Defendant's letter of February 9, 1950, to the bank effectively informed the bank that the policy had been terminated. However, the bank under the cancellation clause of the standard fire policy was also entitled to five days' advance notice of cancellation. On this point, see 6 Appleman, Insurance Law and Practice, p. 712, sec. 4182, and cases cited in footnote 25.

What is the legal effect of a notice of cancellation which fails to comply with a policy or statutory requirement that it be given a certain specified number of days in advance of the cancellation date? In the instant case, in so far as the plaintiff bank is concerned, we hold that the policy continued in force and effect for five additional days from February 9, 1950. We held in *Amberg Granite Co. v. Marinette County* (1945), 247 Wis. 36, 18 N. W. (2d) 496, and *Valentine v. Patrick Warren Construction Co.* (1953), 263 Wis. 143, 56 N. W. (2d) 860, that this was the proper rule to apply in cases involving notices rescinding contracts. Insurance policies constitute but a specialized type of contract, and we deem that this same principle would be applicable thereto. The authorities generally hold that where a policy of insurance requires an advance notice of cancellation of a certain specified number of days, and the notice of cancellation given fails to comply therewith, nevertheless, the same is effective after the lapse of the full time stipulated in the policy. 6 Couch, Cyclopedia of Insurance Law, p. 5087, sec. 1437; 45 C. J. S., Insurance, p. 91, sec. 450 c; annotations in 35 A. L. R. 893, 899 *et seq.,* and 126 A. L. R. 1110; *Hanover Fire Ins. Co. v. Wood* (1923), 209 Ala. 380, 96 So. 250; *Seaboard Mut. Casualty Co. v. Profit* (4th Cir. 1940), 108 Fed. (2d) 597, 126 A. L. R. 1105; *Huston v. Travelers Ins. Co.* (1946), 79 Ohio App. 177, 70 N. E. (2d) 672.

If the purpose of the five-day-notice provision is to afford the insured, or other loss payee, a reasonable opportunity to

obtain other insurance, then the extending of the coverage for such required period, after receipt of a notice of termination which failed to comply with such time requirement, will provide such reasonable opportunity to procure other insurance.

The extension of coverage for an additional five days from February 9, 1950, does not enable the plaintiff bank to recover in the instant case because the fire loss occurred some thirteen months after such extended period of coverage terminated.

*By the Court.*—Judgment reversed and cause remanded with directions to dismiss the complaint.